CHANCERY.        **Couch's Heirs** *vs* **Couch's Adm'r, &c.**

*Case 47.*           APPEAL FROM THE CHRISTIAN CIRCUIT.

*Trusts.   Stale claims.*

*January 18.*     JUDGE SIMPSON delivered the opinion of the Court.

Case stated in the bill.

In 1823, Marshall J. Couch executed to a trustee, for the benefit of his brother, John Couch, a deed conveying several slaves, and a considerable amount of personal property. The object of the deed, as expressed on its face, was to protect and indemnify John Couch from all loss on account of his liability and engagements as surety for the said Marshall J. Courch, in various transactions, some of which only are enumerated in the deed.

Marshall J. Couch died in 1824, intestate, and in the same year administration on his estate was granted to John Couch, Jr., who took into his possession the property contained in the deed of trust, and retained it as administrator, until it was required by the trustee, to be applied to the purposes contemplated by the trust.

All the parties resided in the State of Virginia at the date of the deed, and continued to reside there afterwards for several years. In 1833, John Couch, the *cestui que trust*, removed to the State of Kentucky, and died in the year 1840.

After his death, viz: in the year 1842, this suit in chancery was instituted by the heirs of Marshall J. Couch, against the executor and heirs of John Couch, deceased. The complainants allege in their bill, that John Couch in his lifetime obtained possession of all the property contained in the deed of trust, and held it for their use and benefit. That it had never been sold under the deed, and that no sale of it had been necessary for the indemnity of the *cestui que trust*. They therefore claim the property, or its value, together with the profits arising from the use and possession of the slaves, which are alleged to be of a large amount.

The defendants in their answers, deny the complainant's right to relief. Deny that John Couch their ancestor, obtained possession of any of the trust property, except two of the slaves, purchased by him or his agent, at a sale of the property by the trustee; allege that the whole of the property was sold by the trustee, and that a sale of it was necessary to pay the debts for which the *cestui que trust* was liable as the surety of Marshall J. Couch, deceased. They also rely on the staleness of the claim, and the lapse of time since the transactions occurred, as constituting a bar to the relief asked for.

The Court below dismissed the complainants' bill, refusing them any relief; and from that decree they have appealed to this Court.

That decree, we are of opinion, must be sustained, for the following reasons:

First. The property embraced by the deed of trust, was sold by the trustee. The sale was made with the consent and approbation of the administrator of Marshall J. Couch, deceased, and the proceeds applied under the deed to the purposes therein contemplated, with the joint concurrence of the administrator and the *cestui que use.*

Second. Although the exact application of the proceeds of the sales of the trust property has not been shown, yet as it was the duty of the administrator to superintend the application of the money, and have it rightfully appropriated, and as the sales were made with his knowledge and consent, and the money arising therefrom employed for purposes designated by him and John Couch, the *cestui que use*, the only reasonable presumption is, that the money was used to pay the debts of the intestate, for which John Couch was liable as surety. This presumption is fortified by the fact, that the estate of Marshall J. Couch was largely involved in debt, and indeed actually insolvent; and the administrator would have been guilty of a *devastavit* had he permitted a misapplication of the trust property.

Third. Whatever property contained in the deed of trust, might have remained after satisfying the objects of the trust, constituted assets in the hands of the ad-

VOL. IX. 21

COUCH'S HEIRS
*vs*
COUCH'S ADM'R.

The answers.

Decree of Circuit Court.

Where property conveyed in trust was sold by the trustee and the proceeds applied under the direction of the maker of the deed and the *cestui que trust*, the court will presume that it was rightfully applied unless it be shown to the contrary.

The administrator of one making a deed of trust should administer the re-

Couch's Heirs
vs
Couch's Adm'r.

mainder of the proceeds of a sale of the trust property after satisfying the claims of *cestui que trust*—and if he fail to sue for and recover it before he is barred by lapse, the heirs are also barred.

ministrator for the payment of the debts of his intestate. If therefore, the trustee sold more than necessary, the excess after discharging the debts embraced by the deed, belonged to the administrator for the purpose aforesaid; and if either the property, or the money arising from the sale of any portion of it, which was not necessary to satisfy the provisions of the deed, was withheld from him, he had a right to sue for and recover it, the legal cause of action being in him alone. Now it is evident that a suit in his name against the present defendants, for the same cause of action, commenced at the same time, would be barred by the lapse of time. If, therefore, the administrator, having the legal cause of action, could not maintain the suit, it is undoubtedly true, that the heirs, who have only an equitable right to the distributable surplus, if any, after the payment of debts, would also for the same reason, be unable to maintain it.

Fourth. It is made abundantly manifest that the estate of Marshall J. Couch was insolvent. Debts are still remaining unpaid. The amount of such debts, it is true, does not certainly appear. From the character of the testimony on this point, the probability is, they are of a very considerable amount. It very satisfactorily appears that the whole estate was insufficient to pay the debts against it. Had it been otherwise, the vigilance of creditors residing in the neighborhood, and of an administrator, himself a creditor, would no doubt have led to the ascertainment of the fact. And as John Couch, the *cestui que trust*, who is alleged to have misapplied the trust property, continued to reside in Virginia upwards of eight years after the sale, sufficient time was afforded for that purpose, before his removal to this State. Such being the case, there would be nothing belonging to the heirs in any event, and they have failed to establish even an equitable claim to any part of the estate of their ancestor.

A stale demand not entitled to the favorable consideration of the Chancellor.

Fifth. A claim of this description, which has been permitted to remain dormant for some sixteen or seventeen years, is entitled to very little favor at the hands of the Chancellor. Some years since, when these trans-

actions were fresh in the recollection of parties and witnesses, a clear and lucid explanation of them might have been easily furnished. Now, when the person most interested is dead, and the facts have faded from the memory of the witnesses yet living, a full and detailed account of the existing debts for which the surety was liable, and to the payment of which the trust fund was applied, cannot reasonably be expected. It is sufficient, however, to repel all imputation of fraud, that interested creditors, and a regularly appointed administrator, were on the ground, ready to detect any attempt at unfairness in the application of this fund. The conduct of the trustee and the *cestui que use*, passed unchallenged at the time, and it is now too late to call it in question, or to attempt to characterize it as a wanton violation of good faith, and a fraudulent combination against the rights of unprotected infants.

Wherefore, the decree is affirmed.

*B. & A. Monroe* for appellants; *J. & W. L. Harlan* for appellees.